UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

**FILED**

ᴅᴴ

JUN 2 3 2026

U.S. DISTRICT COURT
INDIANAPOLIS INDIANA

JOHNNY LEE PROCTOR,
Plaintiff,

v.

JESSICA MAXWELL, in her individual and official capacities; JOANI CRUM, in her individual and official capacities; KAYLA HUESMAN, in her individual and official capacities; HANNAH BODENHORN, in her individual and official capacities; DEANNA BURGER, in her individual and official capacities; BOYCE JOHNSON, in his individual and official capacities; CATHERINE STEINER, in her individual and official capacities; JESSICA MILLINER, in her individual and official capacities; KENDALL JOHNSON, in his individual and official capacities; BRITTNEY SULE, in her individual and official capacities; KAYLIE GUY, in her individual and official capacities; SARAH MEJIA, in her individual and official capacities; TARA GOOLEY, in her individual and official capacities; TREAUNA NEELY, in her individual and official capacities; LATISHA LEE, in her individual and official capacities; DAKOTA LADSON, in his individual and official capacities; KYLIE YAPP, in her individual and official capacities; and PAUL E. BAYLOR, in his individual capacity,
Defendants.

Case No. 1:26-cv-01220-JRO-MKK

# AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

# AND JURY DEMAND

Plaintiff Johnny Lee Proctor, proceeding pro se, alleges as follows:

# I. NATURE OF THE ACTION

1. This is a civil-rights action under 42 U.S.C. § 1983 arising from the removal and continued state custody of Plaintiff's minor children, the denial of notice and a meaningful opportunity to be heard, the withholding of favorable evidence, retaliatory restrictions on visitation, coercive paternity-related demands, and the suppression of evidence and testimony favorable to reunification. [See Exs. C, D, E, F, G, H, I, J, K, L, M, N,O, P, Q, R, S, T, U, V, W, X, Y.]

2. Plaintiff seeks declaratory relief, prospective injunctive relief, compensatory damages, punitive damages as allowed by law, costs, and such further relief as the Court deems just and proper.

# II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

4. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this District, and many Defendants reside or work here.

# III. PARTIES

5. Plaintiff Johnny Lee Proctor is the father of five minor children, identified in the state proceedings as B.P., Ja.P., A.P., Jo.P., and D.P. [See Ex. C, pp. 13–14.]

6. Plaintiff brings this action on his own behalf and, to the extent permitted by law, seeks relief for constitutional injuries inflicted on him by Defendants.

7. At all relevant times, the individual Defendants acted under color of state law, were jointly engaged with state actors, or participated in conduct fairly attributable to the State.

8. Defendant Jessica Maxwell was at all relevant times a local office manager or similar supervisory official.

9. Defendant Joani Crum was at all relevant times a regional manager or similar supervisory official.

10. Defendant Kayla Huesman was at all relevant times a supervisor.

11. Defendant Hannah Bodenhorn was at all relevant times a supervisor.

12. Defendant Deanna Burger was at all relevant times a supervisor.

13. Defendant Boyce Johnson was at all relevant times a family case manager and later a supervisor.

14. Defendant Catherine Steiner was at all relevant times a supervisor.

15. Defendant Jessica Milliner was at all relevant times a family case manager.

16. Defendant Kendall Johnson was at all relevant times a family case manager.

17. Defendant Brittney Sule was at all relevant times a family case manager.

18. Defendant Kaylie Guy was at all relevant times a family case manager.

19. Defendant Sarah Mejia was at all relevant times a family case manager.

20. Defendant Tara Gooley was at all relevant times a family case manager.

21. Defendant Treauna Neely was at all relevant times a family case manager.

22. Defendant Latisha Lee was at all relevant times a home-based services provider or similar contractor working in or with the child-welfare system.

23. Defendant Dakota Ladson was at all relevant times a visitation facilitator or similar contractor working in or with the child-welfare system.

24. Defendant Kylie Yapp was at all relevant times a caseworker, attorney, or attorney acting on behalf of state child-welfare interests.

25. Defendant Paul E. Baylor was at all relevant times court-appointed counsel or counsel assigned in the CHINS proceedings.

# IV. FACTUAL ALLEGATIONS

## A. Pre-removal family efforts and services

26. Before state intervention, Plaintiff and the children's mother were addressing family, behavioral, educational, and related concerns. They sought professional help years and months before the intervention at issue. [See Ex. D, Tr. Vol. I, pp. 34–38, 51, 57–58.]

27. The mother testified that the children's grades were improving. [See Ex. D, Tr. Vol. I, pp. 34–38.]

28. The mother also testified that she was working with school counselors and seeking mental-health support for Jo.P. through school-based services. [See Ex. D, Tr. Vol. I, pp. 57–58.]

29. The family had sought counseling referrals for B.P., Jo.P., the mother, and Plaintiff through Open Door Behavior Center and the children's school counselor. [See Ex. D, Tr. Vol. I, pp. 51, 58.]

30. On January 22, 2025, Milliner, Mejia, Steiner, and Yapp filed a predispositional report recommending that Plaintiff undergo a full psychological evaluation. Plaintiff alleges that the report relied on fabricated, misleading, or incomplete information and ignored known evidence that Plaintiff posed no immediate danger to the children, the mother, or himself. [See Ex. P, pp. 1–23.]

31. Plaintiff complied with the order under duress and fear of losing contact with his children.

32. The psychological evaluation completed on March 20, 2025, by Melissa Walters, OBHP, found Plaintiff mentally sound and not posing a danger. [See Ex. Y; Ex. Q, pp. 3–5.]

33. The forced examination was unwarranted, unreasonable, and pretextual.

34. Plaintiff alleges that the individual Defendants failed to meaningfully consider preexisting family efforts before escalating matters toward removal.

35. DCS employees admitted under oath that they never asked whether Plaintiff or the mother had already sought counseling. [See Ex. D, Tr. Vol. I, pp. 93–94.]

36. Defendant Milliner admitted under oath that she never inquired whether the parents had sought services for the family and that she did not observe any injuries. [See Ex. D, Tr. Vol. I, pp. 93–94.]

## B. Protective-order proceedings and recantation

37. On or about September 12, 2024, the children's mother filed an ex parte petition for protection against Plaintiff in Madison County Cause No. 48C06-2409-PO-000758. [See Ex. E, pp. 1–14.]

38. The protective-order petition restricted Plaintiff from the home and from contacting the mother or the children. [See Ex. E, p. 2.]

39. Plaintiff was forced to leave the family home and stay in a men's shelter for approximately ten days. [See Ex. F.]

40. On September 30, 2024, the mother testified that she and Plaintiff were not seeing eye to eye, that she fabricated the allegations, and that Plaintiff had been good to her and the children and had never threatened or physically harmed them. [See Ex. D, Tr. Vol. I, p. 60.]

41. The court dismissed the protective-order case. [See Ex. E, Order dated Sept. 30, 2024, p. 14.]

42. Plaintiff alleges that Jessica Milliner and Kylie Yapp later relied on the same, or materially same, allegations in the CHINS case despite knowing the allegations had been recanted and dismissed. [See Ex. E; Ex. D, Tr. Vol. I, p. 60.]

## C. Initial child-welfare contact and removal of the children

43. On September 19, 2024, the child-welfare agency received the initial report in this case. [See Ex. G, pp. 1–9.]

44. Plaintiff alleges that the report was categorized as a priority-one matter, which required prompt investigation and face-to-face contact under applicable child-welfare policy. [See Ex. G, p. 6, ¶ 10.]

45. On September 21, 2024, Brittney Sule went to the Alternatives shelter for women in Anderson, Indiana, to speak with the mother but did not go to the home to meaningfully interview Plaintiff or to give him or his other son, who was living in the home, an opportunity to provide information that no domestic violence took place in the home. [See Ex. H; Ex. D, Tr. Vol. I, pp. 101–107.]

46. On September 21, 2024, Kaylie Guy also visited the home but focused on speaking with the mother alone, away from Plaintiff, ignoring applicable policy. [See Ex. G, p. 6.]

47. Plaintiff alleges that Guy was assigned as the initial family case manager and had a duty to gather evidence, review history, and contact family members promptly under applicable policy. [See Ex. G, p. 6.]

48. Plaintiff alleges that Guy, Sule, Kendall Johnson, Jessica Milliner, Jessica Maxwell, Joani Crum, and Kayla Huesman failed to follow applicable child-welfare policy and refused to investigate Plaintiff or allow him the opportunity to know that he had been mentioned or reported as a perpetrator. [See Ex. G, pp. 6, 19.]

49. On October 8, 2024, Milliner was assigned to the case, only to check on the mother because several attempts had failed to make contact with the mother, not because the children were reported unsafe as falsely claimed. [See Ex. D, Tr. Vol. I, p. 90.]

50. On October 9, 2024, Jessica Milliner came to the family to talk to the parents about domestic violence and found the mother and children were safe with no evidence of domestic violence happening in the home. She observed the home's conditions were appropriate, saw no immediate danger, and left without conducting a meaningful investigation of Plaintiff. [See Ex. G, p. 6; Ex. D, Tr. Vol. I, p. 90.]

51. Plaintiff alleges that when he questioned Milliner about her statement regarding whether his children were "in a graveyard," Milliner became agitated and thereafter misused her authority by claiming the children were in exigent danger. [See Ex. D, Tr. Vol. I, p. 5.]

52. On October 11, 2024, Milliner returned with law enforcement and removed the children from the family home in Anderson, Indiana without any signs of immediate or exigent danger. [See Ex. I, pp. 1–5.]

53. Plaintiff alleges that the removal occurred without a meaningful pre-removal investigation, without adequate notice, and without reliable evidence of immediate or exigent danger sufficient to justify emergency removal. [See Ex. I, pp. 1–5.]

54. Plaintiff further alleges that Sule, Guy, and Milliner did not timely notify him that he was being treated as an alleged perpetrator and did not give him a fair opportunity to tell his side of the story before the safety plan was discussed and the children were taken. [See Ex. G; Ex. I, pp. 1–5.]

55. Plaintiff alleges that the removal was treated as an emergency despite the absence of bodily injury, arrests, police reports, or other reliable evidence of imminent harm. [See Ex. I, pp. 1–5.]

56. Plaintiff alleges that the removal and issuance of the safety plan were premised on false, stale, or incomplete information, including allegations that had already been challenged in the protective-order proceeding. [See Ex. E.]

## D. Detention hearing and exclusion of the parents

57. On October 15, 2024, the trial court held an initial and detention hearing. [See Ex. D, Tr. Vol. I, pp. 4–8; Ex. J, pp. 1–2.]

58. Plaintiff and the children's mother arrived at the courthouse at approximately 8:30 a.m. and waited in the courthouse lobby until approximately 9:05 a.m. [See Ex. U, Item 1; Ex. V, p. 1.]

59. Plaintiff alleges that they were never called into the courtroom.

60. Plaintiff alleges that Kylie Yapp falsely informed the court that the parents had failed to appear. [See Ex. D, Tr. Vol. I, pp. 4–8.]

61. Plaintiff alleges that the court proceeded without the parents, depriving them of a meaningful opportunity to be heard at a critical stage.

62. Plaintiff further alleges that a deputy observed Plaintiff in the courthouse and informed the court that Plaintiff was present and waiting.

63. Around 9:05 a.m., Plaintiff approached the court information window and was told that the initial and detention hearings had already been completed.

64. Plaintiff was then handed paperwork listing court-appointed counsel information.

## E. Court-appointed counsel Paul E. Baylor

65. Plaintiff alleges that he later terminated attorney Paul E. Baylor's services in writing, but Baylor continued contacting him and attempting to pressure Plaintiff to accept his representation. [See Ex. L.]

66. Plaintiff alleges that he requested Baylor to seek disclosure of more than 175 pages of periodic visitation reports and evaluations showing approximately six months of favorable feedback from contracted visitation facilitators. [See Ex. L.]

67. Plaintiff alleges that those reports documented Plaintiff's compliance, positive parenting interactions, successful visitation, and involvement in services. [See Ex. M, pp. 1–175.]

68. Plaintiff alleges that Baylor knew those reports were favorable and material because the periodic hearing set for April 8, 2025, was Plaintiff's opportunity to show compliance, changed circumstances, and progress toward reunification.

69. Plaintiff alleges that he repeatedly emailed Baylor and requested that Baylor attend family team meetings and present the favorable reports so the state actors could not falsely claim that the meetings were unsuccessful or that Plaintiff was disruptive. [See Ex. L.]

70. Plaintiff alleges that Baylor ignored those requests and failed to attend or meaningfully participate in any Child and Family Team Meetings.

71. Plaintiff alleges that Baylor also ignored Plaintiff's requests for assistance in obtaining the 175 pages of reports and evaluations. [See Ex. L.]

72. Plaintiff alleges that Baylor ceased acting as his counsel in the case without adequate notice or warning, further depriving Plaintiff of the opportunity to present favorable evidence. [See Ex. O.]

73. Plaintiff alleges that Baylor's conduct materially advanced the state actors' false narrative against reunification. [See Exs. L, O.]

## F. Fact-finding and dispositional proceedings

74. On December 3, 2024, the court held a fact-finding hearing. [See Ex. D, Tr. Vol. I, pp. 9–129.]

75. On April 8, 2025, and April 11, 2025, during a periodic review hearing, Boyce Johnson testified that Plaintiff left him a hostile message expressing his opinion about DCS. [See Ex. N; Ex. D, Tr. Vol. I, pp. 130–133.]

76. Plaintiff alleges that Boyce Johnson played a portion of that message and then withheld exculpatory evidence in the form of 175 pages of visitation reports and evaluations that were in his possession and showed Plaintiff was complying. [See Ex. M, pp. 1–175.]

77. Plaintiff alleges that the 175 pages of visitation reports and evaluations, including provider notes and contractor reports, were in the case file, yet Boyce Johnson did not bring them forward or refer to them, knowing they would show evidence favorable to Plaintiff. [See Ex. M, pp. 1–175.]

78. Plaintiff alleges that Boyce Johnson instead testified that Plaintiff and the mother had not started services, had been hostile, had refused services, and had refused to cooperate, despite service records and favorable reports showing otherwise. [See Ex. N, pp. 1–2.]

79. Plaintiff alleges that Boyce Johnson, his supervisor Hannah Bodenhorn, and the CASA later apologized to Plaintiff and the mother on May 14, 2025, stating that Boyce Johnson realized the parents had been in compliance the entire time that he testified they were not. [See Ex. N; Ex. T, pp. 1–10.]

80. Plaintiff alleges that Boyce Johnson acknowledged that the parents were showing up to visits properly prepared and ready to care for the children and reunite during visitation, and that the parents were offered more visitation time. [See Ex. N; Ex. T, pp. 1–10.]

81. On May 14, 2025, Boyce Johnson apologized for being wrong about the parents refusing services and blamed DCS for not making timely referrals, but when Plaintiff asked for the apology in writing, no additional visitation time commenced, and no written apology was provided. [See Ex. T, pp. 1–10.]

82. Plaintiff alleges that Boyce Johnson then worked with Kylie Yapp and the visitation facilitator to pursue a retaliatory allegation after Plaintiff had explained that Dakota Ladson endangered D.P. by leaving her in a van, resulting in a suspension of Plaintiff's visits for approximately three months without a meaningful hearing. [See Ex. T, pp. 1–10.]

83. Plaintiff alleges that Boyce Johnson and his supervisor Hannah Bodenhorn failed to ensure that the children's voices, concerns, and wishes were adequately heard or considered. [See Ex. T, pp. 1–10.]

84. Plaintiff alleges that Boyce Johnson and his supervisors knew or should have known that Plaintiff had been participating in services and had completed at least three domestic-violence classes. [See Ex. N, pp. 1–2.]

85. On January 29, 2025, the court held a dispositional hearing on the predispositional report filed by Defendants requesting that Plaintiff be ordered to submit to a full psychological evaluation. [See Ex. P, pp. 1–23; Tr. Vol. I, pp. 130–133.]

86. On January 31, 2025, the court issued its dispositional order. [See Ex. Q, pp. 1–5.]

87. Plaintiff alleges that the predispositional or dispositional report was submitted with forged or unauthorized signatures and with information that did not accurately reflect the family's progress. [See Ex. P, pp. 1–23.]

88. Plaintiff alleges that Sarah Mejia later testified that she had not signed her name and did not complete the report as submitted. [See Ex. D, Tr. Vol. I, pp. 133–134.]

89. Plaintiff alleges that Catherine Steiner signed or approved the report in a way that misrepresented who had actually completed or authorized it. [See Ex. P, p. 23; Ex. D, Tr. Vol. I, pp. 133–134.]

90. Plaintiff alleges that the individual Defendants withheld more than 175 pages of favorable visitation and service reports showing compliance, positive parenting, and progress. [See Ex. M, pp. 1–175.]

91. Plaintiff alleges that he repeatedly requested those documents from Mejia, Steiner, and other Defendants, including during visits and through counsel. [See Ex. L.]

92. Plaintiff alleges that disclosure was delayed by claims that the documents needed to be redacted while failing to provide them before critical hearings. [See Exs. L, M.]

93. Plaintiff alleges that the state actors also delayed court-ordered referrals for nearly six months after removal despite the family's willingness to comply and despite positive provider observations. [See Exs. N, P, Q.]

## G. Placement, visitation, and child harm

94. Plaintiff alleges that after removal, the children were placed in kinship care, foster care, and other placements that were unsafe or unstable.

95. Plaintiff alleges that the children were denied meaningful phone and email access.

96. Plaintiff alleges that one child, Jo.P., suffered emotional and behavioral decline while in foster care, including mental-health issues, medication issues, hospitalization, and distress after separation from siblings. [See Ex. R.]

97. Plaintiff alleges that the individual Defendants knew or should have known of Jo.P.'s hospitalization but failed to notify Plaintiff in a timely manner. [See Ex. R.]

98. Plaintiff alleges that B.P. reported being watched while showering by a foster relative and that she called the police herself.

99. Plaintiff alleges that on May 14, 2025, during a CFTM, Plaintiff reported Dakota Ladson for leaving D.P. in a hot car without adequate ventilation. [See Ex. T, pp. 1–10.]

100. Plaintiff alleges that the state actors failed to promptly and adequately investigate those allegations.

101. Plaintiff alleges that the individual Defendants, including Boyce Johnson, Sarah Mejia, Tara Gooley, and contractors, restricted letters, calls, and communication in ways that harmed the parent-child bond. [See Exs. R, T, U.]

## H. Retaliation, protected speech, and visitation interference

102.    Plaintiff alleges that after he complained about Milliner's conduct and demanded that the state actors follow their own policies, the state actors retaliated against him by removing the children based on false exigent-danger claims, using known false evidence from a rejected protective-order case, continuing the separation, and restricting reunification. [See Exs. E, I, S.]

103.    Plaintiff alleges that on June 20, 2025, during a home visit or respite-related transition, he was directed to tell the children to speak to a CASA even though no CASA had been appointed or was available.

104.    Plaintiff alleges that he was repeatedly told to use a CASA as a channel for complaints even when no functioning CASA was in place.

105.    Plaintiff alleges that on June 20, 2025, Dakota Ladson told Plaintiff and the children to stop discussing the facts of the case during visits.

106.    Plaintiff alleges that after he complained about visitation safety concerns at his CFTM held on May 14, 2025, Ladson conspired with Boyce Johnson and Kylie Yapp to fabricate claims against him, resulting in suspension of visitation for months without a fair hearing. [See Ex. T, pp. 1–10.]

107.    On April 8, 2025, Boyce Johnson retaliated against Plaintiff for expressing his opinion about the agency and withheld exculpatory evidence consisting of 175 pages of visitation reports and evaluations showing successful visitation and favorable provider observations. [See Ex. N; Ex. M, pp. 1–175.]

108.    Plaintiff alleges that Boyce Johnson gave testimony contrary to the case file and prior notes showing successful parenting, successful visitation, and positive bonds with the children. [See Ex. N, pp. 1–2.]

109.    Plaintiff alleges that Boyce Johnson falsely stated that the mother was hostile and that both parents were refusing services and falsely suggested that the parents had delayed services for two weeks out of the last six months, knowing the state actors had failed to make timely referrals. [See Ex. N, pp. 1–2.]

110.    Plaintiff alleges that the witnesses who attended the CFTM on May 14, 2025, observed that Boyce Johnson apologized and stated that the parents had been in compliance the entire time that he thought they were not, and that he offered more visitation time to compensate for the misstatements. [See Ex. T, pp. 1–10.]

111.    On July 9, 2025, Plaintiff alleges that Latisha Lee stated during a recorded phone call that the state actors were not listening to Plaintiff and did not care what he was saying. [See Ex. U, Item 2.]

112.    Plaintiff alleges that Lee had been assigned to both parents, shifted off Plaintiff's case, and remained on the mother's case.

113.    Plaintiff alleges that Lee then coached and coerced the mother into filing another protective-order petition against Plaintiff on or about July 23, 2025. [See Ex. V, pp. 1–17.]

114.    Plaintiff alleges that Lee promised the mother she would get her children back if she filed the protective order. [See Ex. V, pp. 1–17.]

115.    Plaintiff alleges that the state actors used that later protective-order filing to continue blocking reunification. [See Ex. V, pp. 1–17.]

## I. Religious-practice allegations

116.    From October 11, 2024, to the present, Plaintiff alleges that Defendants ignored his religious objections to certain foods, haircuts, holidays, and forms of religious instruction. [See Ex. L.]

117.    Plaintiff repeatedly informed the state actors, including Sarah Mejia, Boyce Johnson, Hannah Bodenhorn, Tara Gooley, and Deanna Burger, that his family held private religious beliefs and did not consent to the children being compelled to follow practices inconsistent with those beliefs. [See Ex. L.]

118.    Plaintiff alleges that Defendants and Latisha Lee permitted or encouraged the children to participate in religious activities inconsistent with Plaintiff's beliefs, including church services, church plays, Easter activities, and related instruction. [See Ex. L.]

119.    Plaintiff alleges that on April 23, 2026, Tara Gooley texted Plaintiff that Jo.P. wanted a haircut despite Plaintiff's prior religious objections. [See Ex. W, pp. 1–4.]

## J. April and May 2026 spanking allegation and lack of notice

120.    On or about April 8, 2026, Defendant Tara Gooley appeared in court and relied on a new allegation that Plaintiff had spanked one of the children during visitation. [See Ex. W, pp. 1–4.]

121.    Plaintiff alleges that the allegation was used to prevent placement of the children with him. [See Ex. W, pp. 1–4.]

122.    Plaintiff alleges that he never received timely notice of that allegation and was not afforded a fair opportunity to respond before it was used against him. [See Ex. W, pp. 1–4.]

123.    Plaintiff alleges that Defendant Treauna Neely completed notice forms in Plaintiff's presence on April 14, 2026, and admitted that she had not followed child-welfare procedures concerning the assessment. [See Ex. X, pp. 1–2.]

124.    On May 12, 2026, Tara Gooley and her supervisor Deanna Burger used the same false allegations from a prior incident when Plaintiff's visitation had been suspended for three months without a hearing after a visitation-facilitator allegation that Plaintiff hit the visitation facilitator, which resulted in Plaintiff's visits with his children being suspended for three months without a hearing.

125.    Plaintiff alleges that Defendants again suspended Plaintiff's visits with his children on May 15, 2026, without a hearing.

126.    Plaintiff alleges that the individual Defendants continued to rely on stale or false allegations to keep the children out of the home.

## K. Harm

127.    Plaintiff alleges that the removal and continued custody of the children caused severe emotional, familial, spiritual, and practical harm.

128.    Plaintiff alleges that Jo.P. experienced trauma, instability, fear, mental-health consequences, medication, and hospitalization while in foster care. [See Ex. R.]

129.    Plaintiff alleges that the children's emotional and behavioral issues worsened because of unstable placements, lack of support, and separation from their parents and siblings.

130.    Plaintiff alleges that his parental relationship with each child was damaged by Defendants' conduct.

131.    Plaintiff alleges that these injuries were foreseeable and were caused by Defendants' conduct.

# V. CLAIMS FOR RELIEF

## COUNT I

### Procedural Due Process
### 42 U.S.C. § 1983

132.    Plaintiff incorporates paragraphs 1 through 131 as if fully set forth herein.

133.    Plaintiff has a protected liberty interest in the care, custody, and control of his children.

134.    Defendants, acting under color of state law, deprived Plaintiff of that liberty interest without constitutionally adequate notice, disclosure, investigation, or opportunity to be heard.

135.    Defendants failed to timely disclose the factual basis for the accusations, failed to timely disclose favorable records, and failed to provide a fair opportunity to respond before material decisions were made.

136.    Defendants used false, stale, or materially misleading information in the CHINS proceedings and in reunification decisions.

137.    Defendants withheld or failed to timely produce exculpatory or favorable reports and service records.

138.    As a direct and proximate result, Plaintiff suffered constitutional injury and damages. [See Exs. M, N, P, Q, S, T, U, V, W, X.]

## COUNT II

### Fourth Amendment Unreasonable Seizure
### 42 U.S.C. § 1983

139.    Plaintiff incorporates paragraphs 1 through 138 as if fully set forth herein.

140.    The removal of Plaintiff's children from the family home constituted a seizure within the meaning of the Fourth Amendment.

141.    Defendants lacked sufficient lawful basis, exigent circumstances, or reliable evidence of immediate danger to justify the seizure.

142.    Defendants relied on allegations that had been recanted, were stale, were false, or were unsupported by a meaningful investigation.

143.    The seizure was objectively unreasonable.

144.    Plaintiff suffered damages as a result. [See Exs. E, G, I.]

## COUNT III

### Substantive Due Process / Familial Integrity
### 42 U.S.C. § 1983

145.    Plaintiff incorporates paragraphs 1 through 144 as if fully set forth herein.

146.    Plaintiff and his children have a protected liberty interest in familial integrity and parent-child association.

147.    Defendants intentionally and arbitrarily interfered with that relationship by removing the children, prolonging out-of-home placement, restricting visitation, ignoring favorable evidence, and relying on false or misleading information.

148.    Defendants also failed to protect the children from known or reported harm while in state custody.

149.    Defendants' conduct was malicious, arbitrary, retaliatory, and conscience-shocking.

150.    Plaintiff suffered injury and damages. [See Exs. M, N, R, T, V.]

## COUNT IV

### First Amendment Retaliation
### 42 U.S.C. § 1983

151.    Plaintiff incorporates paragraphs 1 through 150 as if fully set forth herein.

152.    Plaintiff engaged in protected activity by objecting to unlawful conduct, complaining about visitation safety, requesting records, seeking hearings, advocating for his children, contesting Defendants' narrative, and asserting paternity-related rights.

153.    Defendants took adverse actions against Plaintiff, including restricting visitation, withholding information, prolonging custody, and blocking reunification.

154.    Plaintiff's protected activity was a motivating factor in the adverse actions.

155.    Plaintiff suffered injury as a result. [See Exs. L, N, S, T, U, V.]

## COUNT V

### Fifth Amendment Compelled Self-Incrimination / Due Process
### 42 U.S.C. § 1983

156.    Plaintiff incorporates paragraphs 1 through 155 as if fully set forth herein.

157.    Plaintiff was compelled to produce DNA and related paternity evidence in a context where Defendants knew or threatened that the evidence could be used to support criminal exposure.

158.    Defendants used the DNA demand as leverage while disregarding Plaintiff's attempt to establish paternity through his affidavit.

159.    Plaintiff faced an unconstitutional choice between compliance with a compelled evidentiary demand and the risk that his own evidence would be used against him in criminal proceedings.

160.    Defendants' conduct violated Plaintiff's privilege against compelled self-incrimination and his right to due process of law.

161.    Plaintiff suffered injury and damages. [See Exs. L, O.]

## COUNT VI

### Voice Suppression / Due Process / Equal Protection
### 42 U.S.C. § 1983

162.    Plaintiff incorporates paragraphs 1 through 161 as if fully set forth herein.

163.    Plaintiff's 14-year-old daughter had information relevant to the CHINS proceedings and a direct interest in family-related decisions.

164.    Defendants used policy 6.11, or a policy invoked under that number, to silence her voice and prevent her from coming to Plaintiff's court hearings.

165.    Defendants excluded or prevented her participation for the purpose and effect of depriving the Court of information favorable to reunification.

166. Defendants' conduct was intentional, retaliatory, and discriminatory in effect, and it deprived Plaintiff of due process and equal protection.

167. Plaintiff suffered injury and damages. [See Ex. L.]

## COUNT VII

### Conspiracy / Joint Action / Failure to Supervise and Train
### 42 U.S.C. § 1983

168. Plaintiff incorporates paragraphs 1 through 167 as if fully set forth herein.

169. Plaintiff alleges, in the alternative and to the extent legally available, that the supervisory Defendants, including Jessica Maxwell, Joani Crum, Kayla Huesman, Hannah Bodenhorn, Deanna Burger, and Catherine Steiner, knew of, directed, ratified, or were deliberately indifferent to the unconstitutional conduct described above.

170. Plaintiff further alleges, in the alternative, that those supervisory Defendants failed to supervise and train subordinate personnel regarding notice, disclosure, emergency removal standards, visitation restrictions, truthful reporting, and reunification procedures, and that such failures were causally linked to the violations alleged here.

171. Plaintiff alleges that Defendants, or some of them, reached an understanding and acted in concert to prolong custody, suppress favorable evidence, misrepresent material facts, retaliate against Plaintiff, and block reunification.

172. The concerted conduct included coordinated testimony, withheld reports, false narratives, coercive paternity-related threats, and retaliatory decisions regarding visitation and placement.

173. These acts and omissions were a moving force behind Plaintiff's constitutional injuries. [See Exs. M, N, P, Q, S, T, U, V, W, X.]

## COUNT VIII

### Declaratory and Prospective Injunctive Relief
### 42 U.S.C. § 1983

174. Plaintiff incorporates paragraphs 1 through 173 as if fully set forth herein.

175. Plaintiff seeks a declaration that Defendants' conduct violated federal constitutional rights.

176. Plaintiff further seeks prospective injunctive relief to prevent ongoing constitutional violations, including lawful notice, fair hearings, timely disclosure of favorable records, non-retaliatory visitation practices, and proper consideration of reunification and placement with a fit parent. [See Exs. Q, S, T, V.]

# VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants and award the following relief:

A. A declaratory judgment that Defendants violated Plaintiff's rights under the First, Fourth, Fifth, and Fourteenth Amendments;

B. Preliminary and permanent injunctive relief barring the continuation of the unconstitutional practices alleged herein, to the extent not barred by jurisdictional or immunity principles;

C. Appropriate prospective relief requiring lawful notice, disclosure, hearing procedures, and fair reunification consideration, to the extent permitted by law against the proper Defendants and in their proper capacities;

D. Compensatory damages in an amount to be proven at trial;

E. Punitive damages against the individual Defendants to the extent permitted by law;

F. Costs of suit and any allowable fees; and

G. Such other and further relief as the Court deems just and proper.

# VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: 6/23 , 2026

JOHNNY LEE PROCTOR
Plaintiff, pro se
2518 Caroline Ave.
Indianapolis, IN 46218
(317) 610-3578
peacefulbrotha2014@gmail.com

# AI CERTIFICATION

This document was generated with the assistance of OpenCase AI. I hereby certify under penalty of perjury that, despite reliance on an AI tool, I have independently reviewed this document to confirm the accuracy and legitimacy of all cited authority and any characterization or summary thereof pursuant to Rule 11 of the Federal Rules of Civil Procedure.

6/23/2026

Johnny Lee Proctor