UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHNNY LEE PROCTOR EL, Individually, )<br><br>Plaintiff, )<br><br>v. )<br><br>INDIANA DEPARTMENT OF CHILD )<br>SERVICES, et al. )<br><br>Defendants. ) | No. 1:26-cv-01220-JRO-MKK |

**ORDER GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*, DISMISSING COMPLAINT, AND PROVIDING OPPORTUNITY TO AMEND**

This matter is before the Court on *pro se* Plaintiff Johnny Lee Proctor El's Motion for Leave to Proceed *In Forma Pauperis*. Dkt. [2]. Plaintiff initiated this action against various defendants affiliated with the child welfare system in Anderson, Indiana, alleging Defendants violated various of Proctor's constitutional rights through the course of his family's child welfare involvement. Dkt. 9. Because the Court **GRANTS** the motion to proceed *in forma pauperis*, this action is also subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons below, the Court **DISMISSES without prejudice** Plaintiff's complaint and provides him with an opportunity to amend his complaint **by August 4, 2026.**

**I. IN FORMA PAUPERIS STATUS**

The Court may authorize a plaintiff to file a lawsuit "without prepayment of fees" if the plaintiff "submits an affidavit" demonstrating that he lacks the

assets to pay the filing fee at this time.  28 U.S.C. § 1915(a)(1).  Plaintiff's motion, dkt. [2], meets this standard and is **GRANTED** accordingly.

While *in forma pauperis* status allows a plaintiff to proceed without pre-paying the filing fee, the plaintiff remains liable for the full fees.  "[A]ll § 1915(a) does for any litigant is excuse the *pre*-payment of fees.  Unsuccessful litigants are liable for fees and costs and must pay when they are able."  *Robbins v. Switzer*, 104 F.3d 895, 898 (7th Cir. 1997)).  The filing fee for *in forma pauperis* litigants is $350.00.  No payment is due at this time, but the $350.00 balance remains due and owing.

## II. SCREENING STANDARD

When a plaintiff is granted *in forma pauperis* status, the Court has an obligation to ensure the complaint is legally sufficient.  28 U.S.C. § 1915(e)(2)(B). The Court must dismiss the complaint if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary damages against a defendant who is immune from such relief.  *Id.*  Dismissal under § 1915 is an exercise of this Court's discretion.  *Denton v. Hernandez*, 504 U.S. 25, 34 (1992). In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "taking all well-pleaded allegations of the complaint as true and viewing them in the light most favorable to the plaintiff."  *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (quoting *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010)).  To survive dismissal, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

2

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Because a defendant must have "fair notice of what . . . the claim is and the grounds upon which it rests," it is not enough for a plaintiff to say that he has been illegally harmed.  *Twombly*, 550 U.S. at 555.  Rather, he must set forth a "short and plain statement" of facts in his complaint such that the Court can infer the ways in which the named defendant could be held liable for the harm alleged.  Fed. R. Civ. P. 8(a)(2).

*Pro se* complaints, such as Plaintiff's, are construed liberally and held "to a less stringent standard than formal pleadings drafted by lawyers."  *Arnett*, 658 F.3d at 751.  Nevertheless, any plaintiff "must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to [him] that might be redressed by the law."  *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010).

### III. THE COMPLAINT

The Court accepts Proctor's factual allegations as true at the pleading stage but not his legal conclusions.  *See Iqbal*, 556 U.S. at 678 ("we must take all of the factual allegations in the complaint as true," but "we 'are not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Twombly*, 550 U.S. at 555)).

Proctor is the father of five children: B.P., Ja.P., A.P., Jo.P., and D.P.  Dkt. 9 at 2.[1]  DCS responded to at least two reports of child abuse or neglect

---

[1] Proctor filed an amended complaint.  Dkt. 9.  His original complaint included hundreds of pages of exhibits, which Proctor references throughout his amended complaint.

concerning Proctor's children in the fall of 2024.  These reports regarded alleged educational neglect and allegations of domestic violence in the family home. Proctor was an alleged perpetrator of the abuse or neglect.  The children's mother obtained an *ex parte* protective order against Proctor in September of 2024 based on allegations of domestic violence.  She later recanted her allegations of domestic violence, resulting in dismissal of the protective order.  DCS family case manager ("FCM") Jessica Milliner ultimately detained the children and placed them in foster care in October of 2024.  FCM Milliner and other DCS staff did not meaningfully interview Proctor, inform him of the allegations against him, consider the fact that the mother recanted her allegations of domestic violence, or consider the steps the family took to prevent removal of the children before removing the children.  Proctor alleges that DCS's failure to notify Proctor that he was an alleged perpetrator and interview him regarding that allegation was a violation of DCS policy.

Proctor alleges additional issues throughout his CHINS case, including the following: (1) DCS attorney Kylie Yapp falsely told the state trial court at the children's detention hearing that the parents were not present, when in fact the parents arrived at the courthouse thirty minutes before the hearing and were waiting in the lobby;  (2) Proctor's court-appointed counsel did not assist him in gaining access to over 175 pages of visitation reports that were favorable to

---

*Compare* Dkts. 1-1 to 1-4, *with* Dkt. 9.  This is improper, as the amended complaint completely replaces the original complaint.  *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017).  The Court's summary of Proctor's complaint below only references his amended complaint, dkt. 9.

Proctor, and DCS employees delayed in providing him with the same;  (3) After Proctor complained about a DCS contractor unsafely leaving one of the children in a hot van, DCS filed a motion to suspend his visits with the children which contained "fabricated" allegations against Proctor. The state trial court granted this motion, resulting in Proctor missing months of visitation with his children; (4) DCS employees and contractors knew of Proctor's religious objections to certain foods, haircuts, holidays, and forms of religious instruction and nevertheless encouraged the children to participate in religious activities contrary to Proctor's beliefs.

Proctor also alleges numerous instances of DCS employees misrepresenting information about the case to the state trial court, making allegations against Proctor in court without notifying him, and preventing the children from testifying at court.

Proctor brings eight claims, all under 42 U.S. § 1983: procedural due process (Count I); Fourth Amendment unreasonable seizure (Count II); substantive due process (familial integrity) (Count III); First Amendment retaliation (Count IV); Fifth Amendment compelled self-incrimination/due process (Count V); voice suppression/due process (Count VI); failure to supervise (Count VII); and declaratory and prospective injunctive relief (Count VII).

## IV. DISCUSSION

Although a plaintiff need not plead legal theories in a complaint, *see* Fed. R. Civ. P. 8(a), Plaintiff has identified the theory under which he seeks to proceed: 42 U.S.C. § 1983.  Where a *pro se* litigant has expressly stated the legal theories

he wishes to pursue, the district court is not required to analyze whether the allegations in the complaint might state a claim under a different legal theory. *See Larry v. Goldsmith*, 799 F. App'x 413, 416 (7th Cir. 2016) (citing *Clancy v. Off. of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 606–07 (7th Cir. 2009)).

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see Buethe v. Britt Airlines*, 749 F.2d 1235, 1238 (7th Cir. 1984) (a court "must raise the issue *sua sponte* when it appears that subject matter jurisdiction is lacking"). "When a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh*, 546 U.S. at 514; *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The plaintiff "bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).

Abstention doctrines limit the jurisdiction of the federal courts. These doctrines say that out of mutual courtesy and respect between state and federal courts—doctrinally referred to as "comity"—federal courts should not "intrude upon the independence of the state courts." *J.B. v. Woodard*, 997 F.3d 714, 721 (7th Cir. 2021) (quoting *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 677 (7th Cir.

2010)).  "Disputes that can be resolved in a CHINS case must be resolved there."

*Ashley W. v. Holcomb*, 34 F.4th 588, 593 (7th Cir. 2022).

**A.    The Court must abstain from exercising jurisdiction over family law matters pending in state court**

Proctor seeks equitable relief in the form of declaratory and prospective injunctive relief.  Dkt. 9 ¶¶ 174–176.  He seeks an injunction "to prevent ongoing constitutional violations, including lawful notice, fair hearings, timely disclosure of favorable records, non-retaliatory visitation practices, and proper consideration of reunification and placement with a fit parent."  *Id.* ¶ 176.  He also seeks compensatory damages.  In order for Proctor's claim for equitable and compensatory relief to survive screening, the Court must have jurisdiction to grant the relief for which he asks.

In *J.B. v. Woodard*, the Seventh Circuit considered when federal courts must abstain from intervening in ongoing family law cases in state court.  997 F.3d 714.  There, a father brought various Section 1983 claims against child welfare workers.  The Seventh Circuit held that abstention was appropriate.  *Id.* at 724.  The court relied on the reasoning of the *Younger* abstention doctrine that "state courts are co-equal to federal courts and are fully capable of respecting and protecting [a plaintiff's constitutional] rights."  *Id.* at 724 (alteration in original) (citing *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1074 (7th Cir. 2018)).  The court reasoned that where plaintiffs seek a favorable federal court judgment to influence ongoing state court decision-making, "federal courts need to stay on the sidelines."  *Id.* at 723.  Because assuming federal jurisdiction would "reflect a lack of respect for the state's ability to resolve the

7

issues properly before its courts"—including issues of domestic relations typically reserved for state courts—the Seventh Circuit affirmed abstention. *Id.* at 724 (cleaned up).

Those same concerns that animated *Woodard* are present here. It is clear that Proctor hopes to gain a favorable ruling here in federal court to use as a tool to his advantage in the state court litigation. *See id.* at 723. He asks this Court to issue an injunction and award compensatory damages that would necessarily involve the Court telling the state court how to proceed. A favorable ruling in this case would require a federal court to find constitutional violations related to Proctor's ongoing state-court CHINS proceedings. This is exactly the kind of interference that the Seventh Circuit forbade in *Woodard*. Such intrusion into the state court's affairs would violate principles of equity, comity, and federalism. *See id.* at 721. Accordingly, the Court must abstain from exercising jurisdiction.

Proctor's silence on the outcome of his state court proceedings also supports abstention here. *Woodard* left the door open to federal intervention when state courts have proven unwilling to address constitutional claims. 997 F.3d at 725. Proctor here does not provide any information showing the state courts have ignored his claims. He had actual notice of the fact-finding hearing and does not argue he was denied an opportunity to be heard there. He does not say whether he appealed the CHINS adjudication. Nor does he say whether he presented any constitutional allegations to the state trial court. On these pleadings, the Court cannot say that state courts have proven unwilling to address Proctor's constitutional concerns. This favors abstention.

8

To be clear, the Court expresses no opinion on the merits of Proctor's claims. The Court simply determines that it should abstain from hearing Proctor's case.

## B.    Sovereign immunity bars suit against state officials

Even if abstention was not required, the Court would dismiss parts of the complaint for other reasons. First, the defendants listed in paragraphs 8 to 21 and 24 are state employees. Under the sovereign immunity doctrine, state employees are immune from suit for money damages in their official capacities. *Gerlach v. Rokita*, 95 F.4th 493, 498–99 (7th Cir. 2024) (citing *Lewis v. Clarke*, 581 U.S. 155, 162 (2017)), *cert. denied*, 145 S. Ct. 1044 (2025). Thus, the Court lacks jurisdiction over Counts I–VII against each state employee in their official capacities.

Further, the Court would be hard-pressed to say that the complaint states claims against each DCS employee in their *individual* capacities. The Seventh Circuit asks courts to scrutinize claims against state officials in their individual capacities: "[W]hen a suit is against a public officer in his or her individual capacity, the court is obliged to consider whether it may really and substantially be against the state." *Luder v. Endicott*, 253 F.3d 1020, 1023 (7th Cir. 2001). When a suit nominally against a state employee in their individual capacity would "interfere with the public administration" or have the "*identical* effect as a suit against the state," it is barred by sovereign immunity. *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984)). As discussed above, Proctor's federal suit aims to interfere with the CHINS case. Thus, even

9

if abstention were not required, the Court has serious doubts that the complaint actually states claims against each state employee in their individual capacities.

**C.     Public defenders cannot be sued under Section 1983**

Another issue with Proctor's case: Proctor sues Paul E. Baylor, his court-appointed attorney for a portion of the CHINS proceedings.  The Supreme Court has held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant . . . ." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981).  Defendant Baylor cannot be sued under Section 1983 as a matter of law.  Thus, even if the Court assumed jurisdiction over Proctor's claims, it would have to dismiss all claims against Baylor.

**D.     Dismissal**

It is common practice for courts abstaining from Section 1983 claims because of ongoing state-court litigation to stay the federal court proceedings until the state court proceedings conclude. However, such stays are impractical in the case of state child welfare cases.  The CHINS case could conceivably last until Proctor's youngest child reaches majority, which would take years.  Requiring this case to sit stayed on the docket for such a length of time is not practical.  *Woodard*, 997 F.3d at 725; *see also Parrish v. Miller*, No. 1:25-cv-00429-TWP-TAB, 2025 WL 1581756, at *7 (S.D. Ind. June 4, 2025).  Abstention via **DISMISSAL** is therefore proper.

## V. CONCLUSION

For these reasons, Proctor's Motion for Leave to Proceed *In Forma Pauperis* is **GRANTED.**  Dkt. [2].  His complaint is **DISMISSED** under the abstention doctrine expressed in *Woodard*.  Dkt. [9].

Proctor will be granted through **August 4, 2026,** to file a second amended complaint if he believes he can cure the defects of the amended complaint discussed above.  "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile."  *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018).

The second amended complaint must (1) contain a short and plain statement of the claim showing that the plaintiff is entitled to relief, which is sufficient to provide the defendants with fair notice of the claim and its basis; (2) include a demand for the relief sought; and (3) identify what injury he claims to have suffered and what persons are responsible for each such injury.

Any amended complaint should have the proper case number, No. 1:26-cv-01220-JRO-MKK, and the words "Second Amended Complaint" on the first page.  The second amended complaint will completely replace all others.  *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("For pleading purposes, once an amended complaint is filed, the original complaint drops out of the picture.").  Therefore, it must set out every defendant, claim, and factual allegation the plaintiff wishes to pursue in this action.

11

If the plaintiff files an amended complaint, it will be screened pursuant to 28 U.S.C. § 1915A(b).  If no amended complaint is filed, this action will be dismissed without further notice or opportunity to show cause.

**SO ORDERED.**

Date: 7/8/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

JOHNNY LEE PROCTOR EL
2518 Caroline Avenue
Apt. C
Indianapolis, IN 46218

12