UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHNNY LEE PROCTOR,<br><br>Plaintiff,<br><br>v.<br><br>INDIANA DEPARTMENT OF CHILD SERVICES, et al.<br><br>Defendants. | ) | No. 1:26-cv-01220-JRO-MKK |

**ORDER DISMISSING AMENDED COMPLAINT AND OPPORTUNITY TO SHOW CAUSE**

The Court previously granted Plaintiff Johnny Lee Proctor's Motion for Leave to Proceed *In Forma Pauperis*. Dkt. 10. Proctor filed a second amended complaint, which is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons stated below, the second amended complaint is **DISMISSED**. Dkt. [11].

**I. SCREENING STANDARD**

When a plaintiff is granted *in forma pauperis* status, the Court has an obligation to ensure the complaint is legally sufficient. 28 U.S.C. § 1915(e)(2)(B). The Court must dismiss the complaint if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary damages against a defendant who is immune from such relief. *Id.* Dismissal under § 1915(e) is an exercise of this Court's discretion. *Denton v. Hernandez*, 504 U.S. 25, 34 (1992).

In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of

Civil Procedure 12(b)(6), "taking all well-pleaded allegations of the complaint as true and viewing them in the light most favorable to the plaintiff." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (quoting *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). To survive dismissal, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Because a defendant must have "fair notice of what the . . . claim is and the grounds upon which it rests," it is not enough for a plaintiff to say that he has been illegally harmed. *Twombly*, 550 U.S. at 555. Rather, he must set forth a "short and plain statement" of facts in his complaint such that the Court can infer the ways in which the named defendant could be held liable for the harm alleged. Fed. R. Civ. P. 8(a)(2). *Pro se* complaints, such as that filed by Williams, are construed liberally and held "to a less stringent standard than formal pleadings drafted by lawyers." *Arnett*, 658 F.3d at 751.

## II. THE COMPLAINT

The Court accepts Proctor's factual allegations as true at the pleading stage but not his legal conclusions. *See Iqbal*, 556 U.S. at 678 ("we must take all of the factual allegations in the complaint as true," but "we 'are not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting Twombly, 550 U.S. at 555)).

Proctor is the father of five children: B.P., Ja.P., A.P., Jo.P., and D.P. Dkt. 11 at 3. The Indiana Department of Child Services ("DCS"), responded to a report

of child abuse or neglect concerning Proctor's children in the fall of 2024. The children's mother obtained an *ex parte* protective order against Proctor in September of 2024. She later recanted her allegations against him, resulting in dismissal of the protective order. Defendants Jessica Milliner, Kylie Yapp, Brittney Sule, Kaylie Guy, Kendall Johnson, Jessical Maxwell, Joani Crum, and Kayla Hausman worked together to remove the children from the family home under an emergency posture. Those defendants did not meaningfully interview Proctor, inspect the family home, or evaluate the older children in the home. Instead, they relied on the "stale, recanted allegations from the dismissed protective order." Dkt. 11 at 4.

Following the removal of his children, Defendant Paul E. Baylor was appointed Proctor's defense counsel. Proctor attempted to fire Baylor but eventually consented to the representation on Baylor's assurances that the attorney would make specific defenses in the CHINS case. *Id.* Proctor now alleges Baylor's promises were "fraudulent" and that he conspired with various other defendants "to ensure a pre-determined CHINS outcome."

Proctor alleges additional issues throughout his CHINS case, including the following: (1) Baylor "intentionally suppressed" over 175 pages of visitation reports that showed Proctor's "pristine compliance," and two DCS employees, Defendants Boyce Johnson and Hannah Bodenhorn, worked to suppress the same; (2) Baylor "deliberately suppressed" a critical photograph of Plaintiff's child's swollen face resulting from lead exposure in his foster home; (3) Johnson fabricated a statement that Proctor and the children's mother were not

cooperating with services despite knowing the mother had begun services and DCS had failed to issue service referrals for Proctor; (4) Defendant Catherine Steiner prepared a forged court report with falsified metrics downplaying the family's case progress; (5) Defendants Ladson, Johnson, and Yapp conspired to retaliate against Proctor by limiting his visitation with his children based on his complaint that Defendants Johnson and Ladson left one of Proctor's children locked inside a hot van; and (6) Defendant Latisha Lee coerced and blackmailed the children's mother into falsely accusing Proctor of domestic violence.

Proctor brings five claims, all under 42 U.S. § 1983: substantive due process/familial integrity (Count I); procedural due process/evidence fabrication and forgery (Count II); First Amendment Retaliation (Count III); civil conspiracy (Count IV); and supervisory liability/deliberate indifference (Count V).

## III. DISCUSSION

Although a plaintiff need not plead legal theories in a complaint, *see* Fed. R. Civ. P. 8(a), Proctor has identified the theory under which he seeks to proceed: 42 U.S.C. § 1983. Where a *pro se* litigant has expressly stated the legal theories he wishes to pursue, the district court is not required to analyze whether the allegations in the complaint might state a claim under a different legal theory. *See Larry v. Goldsmith*, 799 F. App'x 413, 416 (7th Cir. 2016) (citing *Clancy v. Off. of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 606–07 (7th Cir. 2009)).

**A. The Court Must Abstain From Exercising Jurisdiction While Family Law Matters Remain Pending in State Court**

The Court previously dismissed this matter after concluding that abstention was the appropriate course where, as here, a plaintiff may use a federal court favorable judgment to interfere with ongoing state court proceedings. *See* dkt. 10 at 7–9 (citing *J.B. v. Woodard*, 997 F.3d 714 (7th Cir. 2021)). In his second amended complaint, Proctor accepts "the state court's historical CHINS adjudication . . . as fixed for purposes of this action and seeks purely historical monetary damages for separate, completed out-of-court constitutional violations." Dkt. 11 at 3. And he says the fact that DCS dismissed the Termination of Parental Rights action means "a federal judgment for historical damages cannot and will not conflict with an active state court decree." *Id.*

Proctor is mistaken. His lawsuit will interfere with state court proceedings. The Court restates its prior analysis of *J.B. v. Woodard*, 997 F.3d 714 (7th Cir. 2021):

> In *J.B. v. Woodard*, the Seventh Circuit considered when federal courts must abstain from intervening in ongoing family law cases in state court. 997 F.3d 714. There, a father brought various Section 1983 claims against child welfare workers. The Seventh Circuit held that abstention was appropriate. *Id.* at 724. The court relied on the reasoning of the *Younger* abstention doctrine that "state courts are co-equal to federal courts and are fully capable of respecting and protecting [a plaintiff's constitutional] rights." *Id.* at 724 (alteration in original) (citing *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1074 (7th Cir. 2018)). The court reasoned that where plaintiffs seek a favorable federal court judgment to influence ongoing state court decision-making, "federal courts need to stay on the sidelines."

> *Id.* at 723. Because assuming federal jurisdiction would "reflect a lack of respect for the state's ability to resolve the issues properly before its courts"—including issues of domestic relations typically reserved for state courts—the Seventh Circuit affirmed abstention. *Id.* at 724 (cleaned up).

Dkt. 10 at 7–8. Even if Proctor seeks only money damages, he "would have to first establish a constitutional violation of his right to familial association, and he could then use that judgment to interfere with ongoing state court proceedings." *Woodard*, 997 F.3d at 724. Abstention is therefore appropriate.

Ultimately, Proctor's attempts to plead around the Court's abstention concerns in the second amended complaint are unsuccessful. Although Proctor has dropped his request for injunctive relief, he still seeks damages that revolve around the state CHINS proceedings. *See e.g.* dkt. 11 at 6–7. He points to Defendants "intentionally reusing allegations known to be legally dismissed," submitting "negative compliance records into the state's record," "suppress[ing] evidence," and "extort[ing] false state-court filings." *Id.* at 6–8. All of this is related to his ongoing CHINS case, and a federal court's examination of these facts would necessarily call into question the state court proceedings.

Further bolstering the Court's analysis is the fact that Proctor remains silent regarding the state court's openness to hearing his constitutional concerns. As the Court previously put it:

> Proctor's silence on the outcome of his state court proceedings also supports abstention here. *Woodard* left the door open to federal intervention when state courts have proven unwilling to address constitutional claims. 997 F.3d at 725. Proctor here does not provide any information showing the state courts have ignored his claims. . . . [H]e [does not] say whether he presented

> any constitutional allegations to the state trial court. On these pleadings, the Court cannot say that state courts have proven unwilling to address Proctor's constitutional concerns. This favors abstention.

Dkt. 10 at 8. Proctor's second amended complaint likewise does not allege the state court has proven unwilling to address his constitutional claims.

In sum, the Court determines that it should abstain from hearing Proctor's case under the principles of federalism.

**B. Other Deficiencies in the Complaint**

Even if the Court did not abstain from adjudicating this case, Proctor's complaint would face many challenges. First, as the Court previously explained, it would dismiss all claims against Baylor because public defenders cannot be sued under Section 1983 for the reasons already stated in the Court's prior order. Dkt. 10 at 10.

Next, three of the defendants Proctor names did not deprive him of any rights, privileges, or immunities under color of law according to the facts he presents. Section 1983 requires a plaintiff to plead that "a defendant's invocation of state authority in one way or another facilitated or enabled the alleged misconduct." *DiDonato v. Panatera*, 24 F.4th 1156, 1161 (7th Cir. 2022). Proctor's pleading is deficient at least as to Sarah Mejia, Tara Gooley, and Treauna Neely. As to Mejia, Proctor alleges her supervisor forged her signature on a report and that Mejia conceded this under oath. Dkt. 11 at 5. He says nothing more about her conduct. For Gooley, Proctor says she has dismissed the pending Termination of Parental Rights action and authorized a trial home visit between the mother and children. Dkt. 11 at 3, 6. Nothing in these facts suggests

she has violated Proctor's rights. Finally, as to Neely, Proctor recites no facts about her conduct at all. At least as to these three defendants, Proctor fails to plausibly allege they violated his Constitutional rights or that they acted under color of law when doing so.[1] Accordingly, the Court would dismiss all claims against these defendants if it assumed jurisdiction over the case.

**C. Dismissal**

The Court's previous discussion of whether to dismiss this case, rather than stay it, still applies:

> It is common practice for courts abstaining from Section 1983 claims because of ongoing state-court litigation to stay the federal court proceedings until the state court proceedings conclude. However, such stays are impractical in the case of state child welfare cases. The CHINS case could conceivably last until Proctor's youngest child reaches majority, which would take years. Requiring this case to sit stayed on the docket for such a length of time is not practical. *Woodard*, 997 F.3d at 725; *see also Parrish v. Miller*, No. 1:25-cv00429-TWP-TAB, 2025 WL 1581756, at *7 (S.D. Ind. June 4, 2025). Abstention via **DISMISSAL** is therefore proper.

Dkt. 10 at 10.

## IV. CONCLUSION

For these reasons, Proctor's second amended complaint is **DISMISSED** under the abstention doctrine expressed in *Woodard*. Dkt. [11].

Given that this complaint represents Proctor's third attempt to assert a viable federal claim based on the alleged activities of child welfare employees

[1] Because the Court dismisses this case under abstention doctrines, it does not closely examine whether Proctor has pled the other defendants acted under color of state law.

related to his state CHINS case, Proctor shall have through **September 18, 2026,** to **SHOW CAUSE** why final judgment should not issue due to his failure to establish a basis for the Court's subject-matter jurisdiction. If Proctor fails to show cause within the allotted time, this matter shall be dismissed without further notice or opportunity to amend.

**SO ORDERED.**

Date: 8/28/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

JOHNNY LEE PROCTOR EL
2518 Caroline Avenue
Apt. C
Indianapolis, IN 46218